IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DAN SCHMIDT,
       Petitioner,

vs.                             Lead Case No.:  5:12cv226/MMP/EMT

MICHAEL D. CREWS, et al.,
       Respondents.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 57).  Respondent Monica David, Commissioner of the Florida Parole Commission ("Parole Commission" or "FPC"), filed a motion to dismiss the petition on the ground that Petitioner failed to exhaust state court remedies prior to filing his § 2254 petition (*see* docs. 23, 47, 66).  Respondent Michael D. Crews, Secretary of the Florida Department of Corrections ("DOC"), filed a Limited Answer and Motion to Dismiss the petition on the ground that Petitioner procedurally defaulted his claim against the DOC by failing to first exhaust his administrative and state court remedies (*see* docs. 35, 46, 67).  Petitioner filed a response in opposition to the Parole Commission's motion to dismiss, as well as a reply to the DOC's Limited Answer and Motion to Dismiss (docs. 32, 43, 49, 52).  The court directed Respondent David to submit certain portions of the administrative and state court record, and Respondent David has done so (*see* docs. 51, 55, 72, 76, 80, 81).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the

disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.[1]

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this habeas case are established by the portions of the administrative and state court record submitted by the parties. Petitioner's history with the FPC began with his commitment to the DOC on February 22, 1995, pursuant to a judgment and sentence entered by the Circuit Court in and for Bay County, Florida, Case No. 94-788-CFA (doc. 35 at 20–30). Petitioner was adjudicated guilty of robbery, based upon offense conduct that occurred on April 16, 1994, and sentenced as a habitual violent offender to a term of twenty-five (25) years of imprisonment, with pre-sentence jail credit of 308 days (id. at 22–27).

On February 3, 2010, the FPC issued an order that Petitioner be released onto conditional release supervision until April 14, 2019, upon expiration of the maximum period for which he was sentenced (doc. 35 at 32–36). On December 7, 2010, the FPC issued a warrant for Petitioner's arrest for violating the conditions of his supervision (id. at 37–38). The FPC dismissed the warrant on February 25, 2011 (id. at 39).

On November 4, 2011, the FPC issued another warrant for Petitioner's arrest for violating the conditions of his supervision (doc. 35 at 40–41). A revocation hearing was held on February 7, 2012 (doc. 55, Ex. 3). The parole examiner found Petitioner guilty of wilfully and substantially

---

[1] The undersigned is aware that Petitioner's appeal of the district court's denial of Petitioner's "Emergency Motion to Conduct Expedited Proceedings and Forthwith Release Petitioner from Prison Immediately Pending a Decision on His Own Recognizance, Surety, or 'As If' on Probation Without Delay" is pending in the Eleventh Circuit. The order falls within the collateral order doctrine and is immediately appealable. See Pagan v. United States, 353 F.3d 1343, 1345–46 (11th Cir. 2003); see also Lee v. Jabe, 989 F.2d 869, 870 (6th Cir. 1993); U.S. v. Smith, 835 F.2d 1048, 1049 (3d Cir. 1987); Martin v. Solem, 801 F.2d 324, 328 (8th Cir. 1986); Guerra v. Meese, 786 F.2d 414, 418 (D.C. Cir. 1986); Cherek v. U.S., 767 F.2d 335, 337 (7th Cir. 1985); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir. 1981). As a general matter, the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal. See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982); Doe v. Bush, 261 F.3d 1037, 1064 (11th Cir. 2001) ("[A]s a general rule, the filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal."). However, the pending appeal does not deprive the district court of jurisdiction to determine the merits of the amended habeas petition, because the issue on appeal is collateral to the merits of the amended habeas petition. See Mahone v. Ray, 326 F.3d.1176, 1179 (11th Cir. 2003) (a pending appeal does not prevent the district court from entertaining motions on matters collateral to those at issue on appeal); Bush, supra. Further, the disposition of Petitioner's appeal in this case will not render the amended habeas petition moot.

violating the terms and conditions of his conditional release and recommended that his supervision be revoked (*id.*). On March 7, 2012, the FPC revoked Petitioner's conditional release, effective November 6, 2011, based upon the hearing examiner's determination that Petitioner violated the conditions of his supervision as stated in the hearing report (doc. 55, Ex. 4). The FPC ordered Petitioner returned to FDOC custody and denied Petitioner credit for time on conditional release, but granted him pre-hearing jail credit for the period December 5, 2010 to February 25, 2011 (*id.*).

On March 17, 2012, Petitioner filed a petition for review in the Supreme Court of Florida (*see* doc. 57 at 5). On June 5, 2012, the state supreme court transferred the petition to the Circuit Court in and for Okaloosa County, Case No. 2012-CA-002598 (*see* doc. 57 at 5; *see also* doc. 35 at 45–46). Petitioner filed an amended petition on June 25, 2012, raising the claims he presents in the instant federal habeas action (*see* doc. 57 at 4–9; doc. 71 at 6; doc. 81, Ex. 11). On August 30, 2012, the state circuit court denied the petition (doc. 55, Ex. 6). Petitioner filed a motion for rehearing (doc. 55, Ex. 8). On October 15, 2012, the state circuit court granted Petitioner's motion and affirmed its prior order denying Petitioner's habeas petition (doc. 55, Ex. 9).

Petitioner filed the instant federal habeas action on July 16, 2012 (doc. 1).

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v.</u>

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court

conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s

"unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)

---

[3] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In <u>Anderson</u>, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV. PETITIONER'S CLAIMS

Petitioner contends the Florida Legislature violated the separation of powers doctrine by enacting statutes empowering the Parole Commission to release inmates on conditional release supervision, establish the terms and conditions of supervision, revoke supervision, return the releasee to prison upon revocation, and forfeit all gain-time earned up to the date of release (doc. 57 at 4–5) He contends the Legislature unconstitutionally delegated judicial powers to an administrative agency (*id.*). Petitioner additionally contends the Parole Commission violated his federal constitutional rights to counsel, due process, and equal protection, guaranteed by the Sixth and Fourteenth Amendments, by revoking his conditional release supervision without appointing counsel to represent him, without affording him procedural due process, and without competent, substantial evidence to support the revocation (*id.* at 6–8). Petitioner also appears to challenge the Parole Commission and DOC's forfeiture of gain time he had earned prior to his release on conditional release supervision (*id.*).

Respondent David argues Petitioner's claims challenging the revocation of supervision are unexhausted (docs. 23, 66). Respondent David argues Petitioner challenged the revocation by filing a habeas petition in the Circuit Court in and for Okaloosa County, Florida; however, he failed to seek review of that court's decision in the Florida First District Court of Appeal ("First DCA") (*id.*). Respondent Crews asserts an exhaustion defense with respect to Petitioner's challenge to the forfeiture of his gain time upon his re-commitment to the FDOC (docs. 35, 67). Respondent Crews argues Petitioner failed to pursue his available administrative and state court remedies with regard to the gain time issue (*id.*).

Petitioner argues at the time he filed his federal petition, he had no other available state court remedies, because the First DCA imposed sanctions against him in 2010, which precluded him from filing a petition for review of the state circuit court's decision (docs. 32, 43, 49). He additionally contends he was not required to exhaust administrative remedies with regard to the gain time forfeiture, because the FDOC was acting upon the order of the Parole Commission (doc. 49).

The undersigned directed Respondents to respond to Petitioner's arguments (doc. 45). Respondent Crews responded that the First DCA's imposition of sanctions was based upon Petitioner's continued filing of frivolous motions, as well as his failure to respond to the First DCA's order directing him to show cause why sanctions should not be imposed (doc. 46). Crews argues Petitioner should not be rewarded for his disregard of the First DCA by being allowed to file in federal court without first exhausting his state court remedies (*id.*). Crews additionally argues that regardless of whether Petitioner exhausted his state court remedies, the fact remains he failed to exhaust his administrative remedies with regard to the gain time forfeiture (*id.*). Petitioner filed an unauthorized reply to Crews' arguments (doc. 52).

Respondent David argues the First DCA's imposition of sanctions should be deemed an application of a firmly established and regularly followed state procedural rule barring federal habeas review (doc. 47). David additionally argues Petitioner should not be deemed to have exhausted his state court remedies, because Petitioner had an available procedure to seek review of the state circuit court's decision, namely, a petition for review to the First DCA filed by counsel on Petitioner's behalf (*id.*). Respondent David also argues the First DCA's order imposing sanctions is pending review by the Florida Supreme Court; therefore, the First DCA's order is not final (*id.*).

Under Florida law, final actions of the Parole Commission may be appealed by filing a petition for writ of habeas corpus or mandamus in the Florida circuit courts. *See* Fla. R. App. P. 9.030(c); *see also* Richardson v. Fla. Parole Comm'n, 924 So. 2d 908, 910 (Fla. 1st DCA 2006) ("Review of the [Parole] Commission's orders remains available by petitions for habeas corpus or mandamus filed in the circuit court."). The denial of the writ of habeas corpus may then be reviewed by filing a writ of certiorari in the appropriate Florida district court of appeal within thirty days. *See* Fla. R. App. P. 9.030(b)(2), 9.100(c)(1); *see also* Richardson, 924 So. 2d at 910 ("Review of a circuit court's ruling in [reviewing Parole Commission's orders] may be sought by a petition for writ of certiorari in the district court of appeal.").

In the instant case, there is no dispute Petitioner did not seek review of the state circuit court's order denying his state habeas petition. Additionally, it is undisputed that the 30-day period for Petitioner to seek review of the circuit court's in the First DCA expired on November 15, 2012. The issue to be decided by this federal court with regard to exhaustion, is whether review in the First DCA was available to Petitioner and effective to protect his rights, for purposes of § 2254(b)(1).

On August 5, 2010, the First DCA issued the following order:

**ORDER IMPOSING SANCTIONS**

PER CURIAM.

The court sua sponte directed Appellant to show cause why sanctions should not be imposed against him for his continued filing of frivolous pro se motions. Appellant has failed to timely respond to the show cause order. The records of the court reflect that Appellant has appeared as an appellant or petitioner approximately forty-six times since 1994. We conclude that Appellant's excessive filings in this court substantially interfere with the administration of justice and we elect to impose sanctions against Appellant. *See Brown v. State*, 27 So. 3d 63 (Fla. 1st DCA 2009); *Attwood v. Eighth Circuit Court*, 667 So. 2d 356 (Fla. 1st DCA 1995). Accordingly, it is hereby ordered that Daniel K. Schmidt shall secure the filing of a notice of appearance by a member in good standing of The Florida Bar in any case in which he appears as appellant or petitioner, failing which such cases shall be dismissed. Further, the clerk of this court is directed to accept no further pro se filings from Appellant; if received, they shall be returned to him without filing and with a reference to this order.

IT IS SO ORDERED.

Schmidt v. State, No. 1D09-5726, 41 So. 3d 427 (Fla. 1st DCA 2010). Petitioner sought review of that order in the Florida Supreme Court, Case No. SC12-408 (*see* doc. 46 at 3; doc. 47 at 4). The Florida Supreme Court denied the petition for review on February 11, 2013. Schmidt v. State, No. SC12-408, 2013 WL 515014 (Fla. Feb. 11, 2013).

Assuming, without deciding, that the First DCA's order precluding Petitioner from filing anything in that court without counsel rendered review of the circuit court's order "unavailable," which is the position urged by Petitioner (*see* doc. 57 at 6, 8–9), the undersigned concludes Petitioner exhausted his available state court remedies by presenting the claims raised in his amended § 2254 petition to the state circuit court. The next step is to determine whether Petitioner has demonstrated that the circuit court's adjudication of his claims was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law, pursuant to § 2254(d).

    A.    Ground One: "Petitioner was denied his 6th and 14th Amendment rights to counsel and judicial, criminal due process and equal protection of law rights—as well as vested liberty interests echoing the same under Florida Constitution, specifically, the limiting language found in Article IV § 8(c)—when the state's administrative agency, the Florida Parole Commission, initiated and revoked his mandatory conditional release supervision ("MCRS"), forfeited his gain time, and issued an order to FDOC returning him to prison to serve the balance of the sentence imposed by Bay County Circuit Court—Section 947.1405 and 947.141, Fla. Stats (1993), must be declared unconstitutional for empowering the Commission with judicial power, as well as all related statutes—Petitioner is entitled to his immediate and unconditional discharge from custody unless the State restore[s] his gain time and discharges him from prison, with his supervision to be continued as if it had never been interrupted by such unconstitutional activity and laws, within 5 days."

In support of this claim, Petitioner alleges he had satisfied the incarcerative portion of his 25-year "split" sentence when he was released to conditional release supervision after earning and accumulating nearly nine (9) years of gain time (doc. 57 at 4–5). He alleges after nineteen (19) months of "exemplary conduct," and without any legal reason or constitutional authority, the Parole Commission exercised its statutory authority and revoked his supervision, forfeited all of his gain time, and directed the DOC to take him back into custody (*id.*). He alleges the Parole Commission did so "without any criminal, judicial process nor equal protections of law nor representation by counsel" at the revocation proceeding (*id.*). He argues but for the Florida Legislature's

unconstitutionally empowering the Parole Commission with non-delegable judicial power, pursuant to Fla. Stat. §§ 947.1405, 947.141, the Commission could not have exercised its judicial powers in violation of the federal Constitution (*id.*).

The undersigned will address Petitioner's separation of powers argument in this section of the Report, Petitioner's allegations regarding denial of his rights to counsel, due process, and equal protection in section B *infra*, and Petitioner's challenge to forfeiture of his gain time in section C, *infra*.

The state court addressed the federal constitutionality of the conditional release program on double jeopardy, ex post facto, due process, and equal protection grounds, and concluded the program did not violate any of those constitutional protections (doc. 55, Ex. 6).[7] The court did not did not address Petitioner's separation of powers argument (*id.*). Upon review of Petitioner's separation of powers argument, the undersigned concludes it is without merit.

The "provisions of the federal constitution which delineate the powers of the three branches of the federal government have no application to the balance of powers in Florida's system of

---

[7] The state court decision stated:

> The conditional release statute, § 947.1405, Fla. Stat. mandates placement under conditional release supervision for those who are eligible. This supervision lasts until the date on which the inmate would have been released if no gain-time had been awarded. Wesley v. State, 848 So. 2d 1231 (Fla. 2d DCA 2003). Placement on Conditional Release supervision is ". . . freedom subject to supervision as if on parole." Haliburton v. State, 561 So. 2d 248, 252 (Fla. 1990). *See also* Duncan v. Moore, 754 So. 2d 708, 710 (Fla. 2000); Dowdy v. Singletary, 704 So. 2d 1052, 1054 (Fla. 1998). The Petitioner's arguments that his sentence was completed and against the loss of gain time were already rejected by the Court when applied to conditional release in Dowdy v. Singletary, *supra*. The constitutionality of the Conditional Release program has also already been decided. The Duncan court concluded that placing an individual on Conditional Release supervision does not violate any constitutional rights under the Double Jeopardy Clause, Ex Post Facto Clause, Due Process Clause, or the Equal Protection Clause, and does not subject an individual to cruel and unusual punishment. Duncan v. Moore, 754 So. 2d 708, 710 (Fla. 2000).

(doc. 55, Ex. 6).

government, which is established in the state constitution." Pacheco v. Dugger, 850 F.2d 1493 (11th Cir. 1988) (denying separation of powers claim); *see also* Internat'l Brotherhood of Teamsters v. Hank, 339 U.S. 470, 70 S. Ct. 773, 94 L. Ed. 995 (1950) ("The Fourteenth Amendment leaves the states free to distribute the powers of government as they will between their legislative and judicial branches."). Therefore, Petitioner's separation of powers argument is purely a matter of state law. It is well established that federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958–59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991) (quoting Carrizales, *supra*). Because Petitioner's separation of powers argument has no basis in federal law, it is not cognizable on federal habeas review.

Petitioner's separation of powers argument also lacks a meritorious basis under Florida law. Article II, section 3, of the Florida Constitution provides: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." Article IV, section 8(c), of the Florida Constitution, which deals with the executive branch of government, provides that a parole and probation commission shall be created by law and that the commission shall have the power to grant parole and control or conditional release to persons under sentences of crime. The Parole Commission is an agency created within the executive branch, *see* Fla. Stat. § 20.32 (1988), and the Florida Constitution gives it, not the courts, the power to make parole determinations. *See* Harvin v. State, 690 So. 2d 652, 653 (Fla. 1st DCA 1997).

In 1988, the Florida Legislature enacted the Conditional Release Program Act ("CRPA"), Florida Statutes §§ 947.1405, 947.141. The CRPA provides, in relevant part:

(2) Any inmate who:

(a) Is convicted of a crime committed on or after October 1, 1988, and before January 1, 1994, and any inmate who is convicted of a crime committed on or after January 1, 1994, which crime is or was contained in category 1, category 2, category 3, or category 4 of Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure (1993), and who has served at least one prior felony commitment at a state or federal correctional institution;

(b) Is sentenced as a habitual or violent habitual offender or a violent career criminal pursuant to s. 775.084; or
. . . .
shall, upon reaching the tentative release date or provisional release date, whichever is earlier, as established by the Department of Corrections, be released under supervision subject to specified terms and conditions, . . . . If . . . supervision on any nonprobationary or noncommunity control sentence is revoked, such revocation may result in a forfeiture of all gain-time, . . . . A panel of no fewer than two commissioners shall establish the terms and conditions of any such release. . . . The commission shall also determine whether the terms and conditions of such release have been violated and whether such violation warrants revocation of the conditional release.
. . . .
(6) The commission shall review the recommendations of the department [of Corrections], and such other information as it deems relevant, and may conduct a review of the inmate's record for the purpose of establishing the terms and conditions of the conditional release. The commission may impose any special conditions it considers warranted from its review of the release plan and recommendation. If the commission determines that the inmate is eligible for release under this section, the commission shall enter an order establishing the length of supervision and the conditions attendant thereto. . . . . The length of supervision must not exceed the maximum penalty imposed by the court.
. . . .
(9) The commission shall adopt rules pursuant to ss. 120.536(1) and 120.54 necessary to implement the provisions of the Conditional Release Program Act.

Fla. Stat. § 947.1405. In addition, the general Parole Commission statute lists all the powers of the Parole Commission, including the establishment of terms and conditions, under its various programs such as control release, parole, and conditional release. *See* Fla. Stat. § 947.13.

It is clear that the Parole Commission's power to place inmates on supervision flows from the Florida Constitution; it is not a power reserved to the courts. Therefore, Petitioner failed to demonstrate that the Florida Legislature unconstitutionally empowered the Parole Commission with non-delegable judicial power, in violation of separation of powers principles. *See* <u>Mayes v. Moore</u>, 827 So. 2d 967, 971–72 (Fla. 2002).

Moreover, conditional release is not a form of sentence. Although § 947.141 may impose an undesirable condition upon the release of those subject to the statutory requirements by converting gain time that might be awarded into post-release supervision, neither gain time nor conditional release is a true part of a criminal sentence. *See* <u>Mayes</u>, 827 So. 2d at 971. An inmate's eligibility for conditional release is established by statute. Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission. Furthermore, § 947.1405(6) expressly provides that the length of supervision may not exceed the maximum sentence imposed by the sentencing court. Therefore, conditional release does not impose an enhanced criminal penalty or sentence. Moreover, in revoking conditional release, the Parole Commission does not impose a new sentence, rather, it returns a defendant to serve the remainder of a sentence previously imposed by a court. *See* <u>Barber v. State</u>, 988 So. 2d 1170, 1179 (Fla. 4th DCA 2008). Therefore, the CRPA does not violate the separation of powers doctrine.

In Petitioner's case, he qualified for placement on conditional release supervision by virtue of the fact that he was sentenced as a habitual felony offender, *see* § 947.1405(2)(b) (*see* doc. 35 at 23–30).[8] Further, the length of conditional release supervision did not exceed the sentence imposed by the sentencing court. Petitioner was sentenced on February 22, 1995, to twenty-five (25) years of imprisonment (*id.*); thus, his sentence fully expires February 22, 2020. The Parole Commission placed Petitioner on conditional release supervision until April 14, 2019 (doc. 35 at 32–36). Therefore, his term of supervision did not exceed the sentence imposed by the sentencing court.

---

[8] Petitioner's assertion that he was sentenced to a "split" sentence is refuted by the record. The sentencing court sentenced Petitioner to a term of imprisonment of twenty-five (25) years; it did not impose a "split" sentence (doc. 35 at 25).

B. <u>Ground Two: "Assuming, without conceding, that the statutes are not unconstitutional, the Commission violated Petitioner's due process and equal protection of law rights, in violation of the 14th Amendment and applicable United States Supreme Court decisions, by finding Petitioner violated his supervision, revoking it, and requiring him to serve the balance of the sentence imposed by the circuit court, because there was no legally and facially sufficient and substantial, competent evidence to convince a rational trier of fact such violations occurred, as evidenced by the Commission's evidentiary hearing conducted February 7, 2012—state court decisions are unreasonable since it did not review said transcript to evaluate Petitioner's claim."</u>

Petitioner alleges no rational trier of fact could have found him guilty of violating his supervision based upon the evidence adduced at the final revocation hearing (doc. 57 at 6–8).

1. Clearly Established Federal Law

A claim of insufficiency of the evidence derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict. Although the Supreme Court has not specifically held that the Due Process Clause requires sufficiency of the evidence in proceedings involving revocation of probation, parole, or other types of supervision, it has suggested this. *See* <u>Black v. Romano</u>, 471 U.S. 606, 615–16, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process . . . . The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."); *see also* <u>Douglas v. Buder</u>, 412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973) (probation revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated). However, as recognized by the Eleventh Circuit, the Supreme Court has not established that due process in a revocation proceeding requires proof beyond a reasonable doubt that the parolee or conditional releasee committed the alleged violation. *See* <u>United States v. Taylor</u>, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts; all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation). Indeed, the Supreme Court has not specifically stated the standard of proof that must be met in revocation proceedings to satisfy the Due Process Clause. *See, e.g.*, <u>Black</u>, 471 U.S. at 615–16 ("<u>Bearden v. Georgia</u> [, 461 U.S. 660, 666, and n. 7, 103 S. Ct.

2064, 76 L. Ed. 2d 221 (1983)] recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution. We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context."); Douglas, *supra*.

Under Florida law, it is the hearing examiner's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact. *See* Heifetz v. Department of Business Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). The Parole Commission is bound to accept the hearing examiner's findings if the findings are supported by competent, substantial evidence. *See* Tedder v. Fla. Parole Comm'n, 842 So. 2d 1022, 1025 (Fla. 1st DCA 2003) (Commission is not at liberty to reweigh the evidence considered by the hearing examiner where the examiner's finding is supported by competent, substantial evidence); *see also* Richardson v. Fla. Parole Comm'n, 924 So. 2d 908 (Fla. 1 st DCA 2006) (Commission improperly re-weighed evidence in rejecting examiner's conclusions instead of determining whether competent, substantial evidence supported examiner's findings). If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other. Tedder, 842 So. 2d at 1025.

In Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the Supreme Court set forth the process that is due to a parolee arrested for violating his parole. The Court held that upon a parolee's arrest for a parole violation, due process requires that a preliminary hearing be conducted, at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after the arrest, to determine whether there is probable cause or reasonable ground to believe that the parolee committed acts that would constitute a violation of the conditions of his parole. *Id*. at 485 (citation omitted). The Court noted that the preliminary hearing should be conducted by someone other than the parole officer who reported the violations. *Id*. at 486. The Court held that the parolee should be given notice that the preliminary hearing will take place and that its purpose is to determine whether there is probable cause to believe he committed a parole violation; and the notice should state what parole violations have been alleged. *Id.* at 487. The Court further held that at the hearing the parolee may appear, speak in his own behalf, and present relevant information. *Id.* Further, on request of the parolee, the person who gave adverse

information on which parole revocation is to be based should be made available for questioning; however, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination. *Id.* The Court also held that the hearing officer must make a summary of what occurred at the hearing, determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation, and state the reasons for his determination and indicate the evidence he relied on, but formal findings of fact and conclusions of law are not required. *Id.*

Additionally, the Court held that if the parolee desires a hearing prior to the final decision on revocation, due process requires that a hearing be held. *Id.* at 488. At the final hearing, minimum requirements of due process include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 488–89. A conditional releasee is entitled to the same level of procedural protections as a parolee or a probationer, that is, the protections outlined in Morrissey. *See, e.g.,* Schmidt v. Bondi, No. 5:12cv226/MMP/EMT, 2012 WL 4717794, at *2 (N.D. Fla. Oct. 1, 2012).

The Supreme Court addressed the issue of the right to appointed counsel in the parole or probation revocation context as follows:

> We [] find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.
>
> It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of

counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

Gagnon v. Scarpelli, 411 U.S. 778, 790–91, 93 S. Ct. 1756, 33 L. Ed. 2d 656 (1973).

        2.       Federal Review of State Court Decision

The state court adjudicated Petitioner's claims as follows:

> Not only did the commission not abuse its discretion by placing the Petitioner on conditional release, it also did not abuse its discretion by revoking that conditional release when the Petitioner willfully and substantially violated by a preponderance of the evidence. The Petitioner did not have to be convicted of a crime in order to be revoked for behavior associated with that criminal activity. Conviction of a crime is not required in order to revoke supervision. State ex re. Roberts v. Cochran, 140 So. 2d 597 599 (Fla. 1962). The fact finder may determine, independent of a formal conviction, if a law has been violated. Id. at 600. The revocation hearing summary shows that competent and substantial evidence existed to support the factual findings of the hearing examiner that the [P]etitioner was guilty of all three of the violations and that the violations were willful and substantial. Glumb v. Honsted, 891 F.2d 872 (11th Cir. 1990) (the hearing summary provides a sufficient record for review). The summary indicates that the hearing examiner took testimony from multiple witnesses, including the Petitioner. The examiner also admitted several exhibits. At the conclusion of all of this review, the examiner made the specific findings: As to the violation for following, harassing, or cyber stalking the victim, the examiner found the Petitioner willfully and substantially guilty based on the testimony of the supervising officer, the admissions of the Petitioner made to the officer, and the testimony of the victim. As to the violation for not being truthful to his supervising officer, the examiner found the Petitioner willfully and substantially guilty based on the testimony of the officer and the admissions Petitioner made to that officer. As to the final violation for not obeying curfew, the examiner found the Petitioner willfully and substantially guilty based on the

testimony of the Petitioner's mother and the supervising officer. In the instant case, the Petitioner clearly presented his defense before the hearing examiner that the admissions were not his and that he was "set-up" by the victim. The examiner weighed the evidence and the credibility of those testifying and chose to believe the testimony of the supervising officer, the Petitioner's mother, and the victim over the testimony of the Petitioner.

The hearing examiner also chose to believe the admissions the Petitioner made to his supervising officer, in conjunction with the testimony of those involved as well as the exhibits. The direct testimony of the supervising officer is that he asked the Petitioner if he authored the email and the Petitioner confirmed that he did. This is an admission. An admission is competent, substantial evidence. Admissions against interest are an exception to the hearsay rule and constitute direct evidence sufficient to support a revocation. *See* State ex re. Russell v. McGlothin, 427 So. 2d 280 (Fla. 2d DCA 1983). A releasee's admission of guilt is sufficient grounds for a finding of guilt and revocation of supervision. Russell v. Florida Parole Commission, 946 So. 2d 32 (Fla. 1st DCA 2006).

As the trier-of-fact, it was strictly the hearing examiner's function to determine the credibility of the witnesses and resolve any conflicts in the evidence. McKinney v. State, 624 So. 2d 373 (Fla. 1st DCA 1993); D.M.L. v. State, 773 So. 2d 1216, 1217 (Fla. 3d DCA 2000). The trier-of-fact ". . . is the sole judge of the credibility of a witness" who has testified and was cross-examined in a hearing before the fact-finder. *See* Louis v. Blackburn, 630 F.2d 1105, 1110 (5th Cir. 1980).

The Parole Commission is not authorized to reject the examiner's factual findings unless the record was devoid of competent substantial evidence from which the findings could reasonably be inferred. Tedder v. Florida Parole Commission, 842 So. 2d 1022, 1025 (Fla. 1st DCA 2003). The record demonstrates that the examiner's factual findings were not devoid of competent and substantial evidence. Like the Commission, this Court is also not able to reweigh the evidence or the credibility of the witnesses. In Campbell v. Vetter, 392 So. 2d 6 (Fla. 4th DCA 1981), the court held that "(I)n its review capacity, a circuit court may not reevaluate conflicts in the evidence to determine whether there is substantial competent evidence to support the decision of the lower tribunal . . .(s)uch action would amount to an improper granting of a trial de novo." (Id. at 8, citation omitted).

Next, contrary to the Petitioner's assertions, Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 33 L. Ed. 2d 656 (1973) is current law and he does not have an absolute right to the appointment of counsel in these hearings. The Florida Supreme Court has held that the State is not under a constitutional duty to provide counsel for indigents in all revocation proceedings. Floyd v. Parole and Probation Commission, 509 So. 2d 919 (Fla. 1987). The decision as to whether to appoint counsel is made

on a case by case basis. At the hearing, in the examiner's opinion and discretion, the Petitioner did not meet the Gagnon criteria for appointed counsel. The Petitioner offers absolutely no evidence which even hints of an inability to provide his own defense or speak for himself much less demonstrate a due process violation. The examiner clearly articulated the reasons for the denial of counsel, which are in accordance with the holding in Gagnon v. Scarpelli.

Lastly, not only were the findings of the examiner based on competent and substantial evidence, and the Petitioner was properly denied counsel, the hearing summary also shows that the Petitioner received all of his rights to due process in these hearings according to Morrissey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484, 499 (1972). The examiner noted the witnesses and evidence that the Petitioner requested and the status of all. The examiner reviews the "reliability of the available evidence, and the totality of the evidence under the circumstances in [the] case." Russell v. State, 982 So. 2d 642, 647 (Fla. 2008). Rule 23-23.011(4)(g), Fla. Admin. Code, allows the Commission to deny the testimony of witnesses that would be cumulative, irrelevant or nonprobative. The witnesses must be able to provide information about the actual circumstances of the violations. The witnesses that Petitioner lists in his petition were either denied, not requested by the Petitioner at the time of the hearing or noticing, which this Court cannot review ([State v.] Barber [ ], 301 So. 2d 7 (Fla. 1974); Miller v. Florida Parole Commission, 613 So. 2d 604 (Fla. 1st DCA 1993)), or refused to come.

In a revocation hearing the releasee's violation of a condition of supervision does not have to be proven beyond a reasonable doubt. State ex re. Florida Parole & Probation Com. v. Helton, 313 So. 2d 413, 415 (Fla. 1975); *see also* Morris v, State, 727 So. 2d 975, 977 (Fla. 5th DCA 1999); Rock v. State, 584 So. 2d 1111, 1112 (Fla. 1st DCA 1991) (*remanded on other grounds*, 605 So. 2d 456 (Fla. 1992)). The Commission need only find that the releasee violated his supervision by a preponderance of the evidence. Morrissey et al. v. Brewer, *supra*. "A revocation hearing is not a traditional adversary criminal trial but is only a final evaluation of any contested relevant facts and consideration of whether the facts warrant revocation." Singletary v. State, 290 So. 2d 116, 121 (Fla. 4th DCA 1974). The fact finder is neither required to follow strict rules of evidence nor precluded from considering material that would generally not be admissible in a trial. Id. The revocation hearing proceedings are sentencing function [sic], not a criminal trial. *See e.g.* State v. Jones, 425 So. 2d 178, 179 (Fla. 1st DCA 1983). The presentation of witnesses and evidence is not unlimited. Brill v. State, 32 So. 2d 607, 609 (Fla. 1947). The hearing summary shows multiple witnesses and evidence presented. The examiner seemed to go above and beyond to attempt to accommodate the Petitioner's multiple extenuating requests; denying very little and attempting to get statements or information in lieu of evidence when evidence was no longer available. The

hearing met and surpassed the limited due process requirements for these types of hearings.

      The arguments presented in the instant petition contain merely conclusory allegations, which are insufficient as a mater of law to demonstrate entitlement to extraordinary relief. Petitioner has not demonstrated that the Commission abused its discretion in accepting the hearing officer's findings of guilt and that the violations were willful and substantial, and revoking release based on that finding.

(doc. 55, Ex. 6).

Initially, Petitioner is not entitled to relief on his claim that he was denied his Sixth and Fourteenth Amendment rights to counsel. The record shows that Petitioner requested that the Parole Commission appoint counsel for him (doc. 55, Ex. 1). The hearing examiner denied Petitioner's request for appointment of counsel on the following grounds:

      . . . the Subject [Petitioner] has failed to present a timely and colorable claim that he/she has (1) not committed the alleged violation(s) or (2) the facts surrounding the alleged violation(s) do not involve complex issues relative to mitigation of the violation(s); and (3) the undersigned has determined that the Subject is fully capable of understanding the charges and speaking effectively for himself/herself; and

      . . . it is the opinion of the undersigned that the facts involved in the alleged violation are not of sufficient complexity to necessitate the appointment of counsel.

(doc. 55, Ex. 2). Petitioner failed to demonstrate that he did not have the ability to provide his own defense at the revocation proceedings, or that fundamental fairness otherwise required the State to provide counsel for him at the State's expense. Therefore, Petitioner failed to demonstrate the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law.

Additionally, Petitioner is not entitled to relief on his substantive and procedural due process claims. The record contains evidence to support the Parole Commission's determination that Petitioner violated the conditions of his controlled release requiring that he (1) obey all laws or statutory conditions of his release (Condition 7), (2) promptly and truthfully answer all questions asked and follow all instructions given to him by his Conditional Release Officer or the Commission (Condition 8(d)), and (3) comply with his mandatory curfew by remaining confined to his approved residence during the hours 10:00 p.m. to 6:00 a.m. (Special Condition 16).

Petitioner was charged with violating Condition 7 by unlawfully, willfully, and maliciously repeatedly following, harassing, or cyber-stalking Krista Navarro on September 26, 2011 to October 23, 2011 (doc. 55, Exs. 1, 3). The hearing examiner found Petitioner guilty of the violation based upon the testimony of James Winters, Petitioner's Conditional Release Officer, that Petitioner admitted to him that he authored an e-mail message to Winters outlining his admission to "tracking" Ms. Navarro, as well as Ms. Navarro's testimony that she saw Petitioner in places where he should not have been (doc. 55, Ex. 3). The examiner obviously did not find credible Petitioner's assertion that his e-mail account had been "hijacked," and he did not author the e-mail message to Officer Winters.

Petitioner was charged with violating Condition 8(d) by stating to Conditional Release Officer Winters that he had to work late on various occasions from September 26, 2011 to October 23, 2011, and Petitioner knew his statements were untrue because he admitted he was stalking Krista Navarro during that time (doc. 55, Exs. 1, 3). The hearing examiner found Petitioner guilty of this violation based upon the testimony of Conditional Release Officer Winters that Petitioner admitted he authored the e-mail outlining his admission to providing false information to Winters regarding his whereabouts between September 26, 2011 and October 23, 2011 (doc. 55, Ex. 3). As previously discussed, the examiner rejected Petitioner's assertion that his e-mail account had been "hijacked."

Petitioner was charged with violating Special Condition 16 by failing to stay confined to his approved residence at 11:06 p.m. on November 4, 2011 (doc. 55, Exs. 1, 3). The hearing examiner found Petitioner guilty of this violation based upon testimony from Petitioner, Jacqueline Jechort, and Conditional Release Officer Winters, that Petitioner was not confined to his approved residence during the curfew period on November 4, 2011, and did not have prior permission to be away from his residence (doc. 55, Ex. 3).

The Parole Commission adopted the hearing examiner's findings and determined Petitioner willfully violated substantial conditions of his Conditional Release, specifically, Conditions 7, 8(d) and Special Condition 16 (doc. 55, Ex. 4). The Commission revoked his conditional release and ordered Petitioner confined to the Department of Corrections, effective November 6, 2011, with credit for the period he was incarcerated on a prior revocation charge that was dismissed, December 5, 2010 to February 25, 2011 (*id.*).

The hearing examiner heard firsthand the testimony of Officer Winters, Ms. Navarro, and Petitioner himself, and weighed the credibility of the testimony. In light of the hearing examiner's findings and the record before the Parole Commission, the revocation was supported by competent, substantial evidence. Further, even though the State Attorney's Office nolle prossed a criminal stalking charge against Petitioner involving Ms. Navarro (*see* doc. 55, Ex. 3), that fact does not change this conclusion. *See* United States v. Jolibois, 294 F.3d 1110, 1114 (9th Cir. 2002) (upholding a revocation of supervised release based upon actual conduct where the defendant was not prosecuted for that conduct); Taylor v. U.S. Parole Comm'n, 734 F.2d 1152, 1155 (6th Cir. 1984) (parole violation may be based on criminal charges that were dismissed prior to trial) (internal citation omitted); State v. Jenkins, 762 So. 2d 535 (Fla. 4 DCA 2000) (affidavit of probation violation did not have to be dismissed on the ground that the state had nolle prossed the assault charge that was the basis for the violation of probation, as nolle prosequi at most meant that the state did not have sufficient evidence to meet its burden of proving guilt beyond a reasonable doubt, which was a higher standard than was required to prove the probation violation); *see also* Russ v. State, 313 So. 2d 758, 760 (Fla. 1975) ("An acquittal in a criminal case does not preclude the judge from determining that a parole or probation violation has occurred based upon the same conduct); State v. Green, 667 So. 2d 959, 961 (Fla. 2d DCA 1996) (same); Cavalcante v. Fla. Parole and Prob. Comm'n, 414 So. 2d 658, 659 (Fla. 1st DCA 1982) (same).

Moreover, Petitioner failed to demonstrate he was denied the procedural due process protections set forth in Morrissey. In fact, the record demonstrates Petitioner received all of the procedural protections he was due (*see* doc. 55, Exhibits).

Petitioner failed to demonstrate the state court's adjudication of his procedural and substantive due process claims was based upon an unreasonable determination of the facts, or that the court's decision was contrary to or an unreasonable application of clearly established federal law. Therefore, Petitioner is not entitled to federal relief on his due process claims.

Petitioner likewise failed to demonstrate he is entitled to relief on his equal protection claim. The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). To state a claim under the Equal Protection Clause,

the claimant generally must allege "that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted). Thus, in order to assert a viable equal protection claim, the claimant must first make a threshold showing that he was treated differently from others who were similarly situated to him. See Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). The claimant must also allege that the alleged violator acted with the intent to discriminate against him. See McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987). The Equal Protection Clause is also implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the claimant "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination. Id. at 1204–05.

Other than in conclusory fashion, Petitioner did not allege, in state court or this federal habeas court, he was similarly situated with other releasees who received more favorable treatment than he. Moreover, with respect to a traditional equal protection claim, Petitioner failed to allege that the allegedly discriminatory treatment was based on a constitutionally protected interest, such as race. Furthermore, as to both types of equal protection claims, Petitioner did not allege the Parole Commission acted with the intent to discriminate against him. He therefore failed to demonstrate an equal protection violation under the Fourteenth Amendment.

To summarize, Petitioner failed to show the state court's adjudication of his federal constitutional claims was based upon an unreasonable determination of the facts, or contrary to or

an unreasonable application of clearly established federal law. Therefore, he is not entitled to federal habeas relief.

C.      Petitioner's Challenge to Gain Time Forfeiture

Petitioner's challenge to the forfeiture of his gain time credits is without merit. While the Eleventh Circuit has not decided whether a State's forfeiture of an inmate's gain time once a prisoner's release is revoked because of a violation of its conditions violates federal law, the Eleventh Circuit has rejected this argument in the context of federal parole. *See* Lambert v. Warden, U.S. Penitentiary, 591 F.2d 4, 8 (5th Cir. 1979) (concluding it is well-settled that once a federal prisoner's release is revoked because of a violation of its conditions, the parole commission "ha[s] the authority to forfeit the [prisoner]'s good-time credit as well as credit for time spent on conditional release").[9] The CRPA specifically provides for forfeiture of all gain time "earned up to the date of release." *See* Fla. Stat. § 947.141(6). Further, effective in 1988—prior to Petitioner's commission of the crimes in the instant case—Florida's gain time forfeiture statute was amended to allow the FDOC to forfeit, without notice or hearing, in the case of a prisoner whose conditional release was revoked, all gain time earned before his conditional release. *See* Fla. Stat. § 944.28(1) (1988). Therefore, the FDOC had statutory authority to forfeit Petitioner's gain time upon revocation of his conditional release. *See* Dowdy v. Singletary, 704 So. 2d 1052, 1053–54 (Fla. 1998).

Moreover, Petitioner's original sentence was not increased as a result of the FDOC's forfeiture of his gain time. At the time he was released on conditional release on February 3, 2010, he had actually served only 5,768 days (5,460 days of time served plus 308 days of pre-sentence jail credit) of the 9,125-day (25-year) sentence originally imposed by the sentencing court in 1995. Through the benefit of gain time, Petitioner was released 3,357 days early to begin a term of conditional release supervision. After the revocation of his supervision, Petitioner was simply required to serve the remaining 3,357 days of his original 25-year sentence, less 83 days of credit authorized by the Parole Commission (from December 5, 2010, to February 25, 2011). Therefore,

---

[9] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

the FDOC did not increase his sentence beyond the original sentence. *See, e.g.*, <u>Logan v. McNeil</u>, No. 5:06cv10/SPM/EMT, 2009 WL 595922, at *4–8 (N.D. Fla. Mar. 6, 2009); <u>Trotter v. McDonough</u>, No. 3:06cv129/RV/EMT, 2007 WL 1655440, at *8–9 (N.D. Fla. June 5, 2007).

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Respondents' motions to dismiss (docs. 23, 35) be **DENIED**.

2.      That the amended petition for writ of habeas corpus (doc. 57) be **DENIED**.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 5<u>th</u> day of March 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

  Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).